SMITH, Respondent, v. BELOIT CORPORATION, Appellant.

*No. 131. Argued October 28, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 585.)

552

For the appellant there were briefs by *William S. Wood* and *Nowlan, Mouat, Lovejoy, McGuire & Wood,* all of Janesville, and oral argument by *William S. Wood.*

For the respondent there was a brief by *Cleland P. Fisher* and *George H. Murwin,* both of Janesville, and oral argument by *Mr. Fisher.*

ROBERT W. HANSEN, J. Plaintiff's position is that the parties entered into a contract for "permanent" employment, meaning employment for as long as the plaintiff performed this work properly and the defendant continued to be engaged in the business in which connection it hired plaintiff. Defendant's position is that the contract was terminable at will by either employer or employee with no fixed period of employment guaranteed. On the record as here established, neither position can be sustained.

In a recent case [1] this court quoted with full approval the general rule that ". . . a contract for permanent employment, for life employment, or for other terms pur-

---

[1] *Forrer v. Sears, Roebuck & Co.* (1967), 36 Wis. 2d 388, 153 N. W. 2d 587.

porting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages." [2] Interpreting and applying the general rule, this court then stated "Although not absolute, the above stated rule appears to be in the nature of a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." [3] The usual and accepted definition of the term "permanent employment" is that it refers to the ordinary business contract for a continuing employment, terminable at the will of either party.[4]

To hold otherwise would be to give the words "permanent employment" a vise-like grip, holding both employer and employee in a career-long embrace. As this court pointed out, "The presumption [*i.e.*, that "permanent employment" means merely the ordinary business contract] is grounded on a policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position." [5] Permanent employment is to be distinguished from transient or from temporary employment for some fixed, limited time but unless express agreement or compelling circumstances enlarge its usual

---

[2] *Id.* at page 393 citing Annots. (1924), 35 A. L. R. 1432 and (1941), 135 A. L. R. 646. The court also cited Annots. (1917), 11 A. L. R. 469 and (1934), 100 A. L. R. 834 in which it is added "The same is true where the contract of hiring specifies no term of duration but fixes compensation at a certain amount per day, week or month."

[3] *Forrer, supra,* footnote 1, at page 393.

[4] 56 C. J. S., *Master and Servant,* p. 78, sec. 8, cited in *Forrer, supra,* footnote 1, at page 393.

[5] *Forrer, supra,* footnote 1, at page 393.

meaning, "permanent employment" does not mean that employment is guaranteed for as long as the employee does his work properly and the employer remains in the business.

Insofar as plaintiff's case concerning permanent employment rests on contract, we find that he did not give consideration additional to the services rendered through his employment to the defendant. *Forrer* holds that unless such additional consideration passes from the employee to the employer the contract of hire is terminable at will.[6] Here, the plaintiff was interviewed twice by defendant's representatives, entered into a contract of employment with defendant, terminated his employment in Canada of some years duration, and began working for defendant. The only economic or financial benefit plaintiff conferred on defendant was that he entered into its employment.[7]

Plaintiff contends that the doctrine of promissory estoppel applies in this situation.[8] This court on more than one occasion stated that the failure to plead a cause of action for promissory estoppel precludes a party from raising this issue as a matter of right on appeal.[9] Since the plaintiff here did not plead promissory estoppel, he is thus precluded. It should be mentioned that in the *Forrer Case* where the sale of livestock, the leasing of the barn, and putting the farm into the feed-grain program accompanied the acceptance of permanent employment, the court held that justice did not require the invocation of the doctrine because the promise was kept.

---

[6] *Forrer, supra,* footnote 1, at page 394.

[7] In *Forrer* plaintiff argued that he was required to give up his farming operations to work for the defendant. The court held that no additional consideration passed to the defendant because of it.

[8] *See Hoffman v. Red Owl Stores, Inc.* (1965), 26 Wis. 2d 683, 133 N. W. 2d 267.

[9] *Babler v. Roelli* (1968), 39 Wis. 2d 566, 159 N. W. 2d 694; *Winnebago Homes, Inc. v. Sheldon* (1966), 29 Wis. 2d 692, 139 N. W. 2d 606.

Here also the promise insofar as it was one of permanent employment was kept. There is no evidence to rebut the presumption that by permanent employment the parties reasonably understood that the phrase meant anything other than its common and accepted usage. The presumption is thus controlling. Justice does not require application of the doctrine.

We have concluded that the "permanent employment" offered plaintiff and accepted by him falls far short of the assurances that he (and the jury) read into it. Does it then follow that as defendant contends, the employment contract was without fixed terms and terminable at will by either party? Is it a reasonable inference from the record that plaintiff was assured one year's employment to familiarize himself with company operations? Is this the only reasonable inference from the record? Are we dealing with an issue of fact for a jury or a matter of law for the court to determine?

The issue as to whether a contract of employment for a period of one year was created is not raised by appellant or respondent in their briefs. It was referred to by plaintiff's counsel on oral argument. However, the jury was instructed by the court that plaintiff's employment could have been for a fixed and definite period of time. This instruction was not objected to. In its memorandum opinion on motions after verdict, the trial court gave detailed consideration to the question of whether a contract of employment for one year's duration had been established and concluded that there was evidence of such contract sufficient to support the jury's finding as to the breach of contract by the defendant.[10] We concur with the trial court that if there is credible evidence to support a finding that a contract of hire for a period of one year was entered into, the jury finding that the contract was breached has an underpinning on which it can stand.

---

[10] Defendant requested a special verdict question as to the term of employment. The request was denied.

The evidence as to whether a contract of employment for one year was established involves the same two interviews and the same written offer of employment on which plaintiff relied in seeking recovery on the basis of permanently permanent employment. More exactly, it relates to the interviews; for the written offer of employment contains no reference to a term of one year. However, the trial court held and properly so, that the accepted written offer did not incorporate all terms and details of the agreement between the parties.

It is not disputed that, at the first interview, the company representative referred to the company's not expecting ". . . much production from us for a year," stating that ". . . it would take us [meaning the plaintiff] at least a year to be fully productive," that plaintiff ". . . would be brought on in easy stages, and within one year we would be a production asset." At the second interview, once again based on plaintiff's recollection, it appears clear that the company representative referred to the plaintiff being given ". . . this period of one year before I would be capable, to their way of thinking, of fully performing my particular task in their field."

The trial court's ruling that the contract contained terms other than those reduced to writing appears proper, particularly because of the testimony that the formal written offer was made at least partly because immigration authorities required some assurance that plaintiff had employment in the United States of a kind other than transitory or temporary. Neither party had disavowed the materiality or objected to the admissibility of the contents of the two interviews, so they must be viewed as more than terms merely mentioned in preliminary negotiations or expressions of general intent not amounting to a promise. In fact, the company representative, Telfer, testified that an offer of employment was made at the second interview. We would conclude that there was ample credible evidence to establish that plaintiff

was promised employment for a period of one year and that it was this promise that was accepted by him.

Plaintiff, of course, was discharged within the one-year period. Since the jury finding that the discharge was wrongful is not challenged nor argued, we are inclined to sustain the trial court in upholding the jury's verdict in this regard. We find that there is sufficient credible evidence to support the jury verdict that defendant wrongfully discharged the plaintiff during the period of one year in which he was assured employment by defendant.

What then is the measure of damages? The trial court listed a number of factors which he held the jury was entitled to consider in fixing damages. They included the humiliation sustained by a proud man, permanent injury to professional reputation and additional living expenses occasioned by his new employment. These elements of damages aside from being quite speculative in nature, appear to us to fall outside the pale as being outside the reasonable contemplation of the parties and without basis in the record here established. It seems to us that the proper measuring stick for damages is the actual wage loss and actual expenses of relocation incurred by plaintiff and established by the record.

We reject defendant's contention that plaintiff failed to mitigate damages by refusing to accept an available job with reduced pay offered by defendant at the time of discharge from the original position accepted. Plaintiff is not required to accept such offer of re-employment at a reduced rate.[11]

The period of wage loss, actual and full, runs to the date on which he accepted successor employment, incidentally at a rate of compensation somewhat higher than paid him in the position from which he was discharged.

[11] *Dahl v. The S. S. Amigo* (D. C. Ala. 1962), 202 Fed. Supp. 890; *Williams v. School Dist. No. 189* (1919), 104 Wash. 659, 177 Pac. 635. *See* Annot. (1930), 72 A. L. R. 1049, 1058.

There appears to us no dispute that the period of time that the plaintiff was out of work was three and two-thirds months. During this period of time he lost very nearly $2,600 in salary. We fix that as the wage loss incurred, and add to it his moving expenses to the successor job in Milwaukee of $120 and his earlier job searching expenses of $200, both figures being the amount testified to by the plaintiff at the trial. Adding these amounts together, limiting the right to recover damages to the items listed, we reduce the verdict to $2,920 and modify the judgment to set forth this amount as the amount to which plaintiff is entitled as damages.

*By the Court.*—Judgment modified and, as modified, affirmed.